<u>**DECLARATION OF SERVICE BY MAIL & ELECTRONIC SERVICE**</u>

I, the undersigned, declare:

I am over eighteen (18) years of age, and not a party to the within cause; my business address is 617 South Olive Street, Suite 810, Los Angeles, CA, 90014; that on May 11, 2015, I served a copy of the within:

<b>APPELLANT'S OPENING BRIEF</b>

on the interested parties by placing them in an envelope (or envelopes) addressed respectively as follows:

Mr. Samuel Baines, AV0284          Clerk of the Superior Court
CSP-CEN                            San Bernardino County
C-1-236                            14455 Civic Drive
P.O. Box 921                       Victorville, CA 92392
Imperial, CA 92251                 Attn: Honorable John M. Tomberlin

Ms. Mari Ann Braun                 Mr. Michael Mendoza
Office of the District Attorney    Office of the Public Defender
San Bernardino County             San Bernardino County
14455 Civic Dr.                    14344 Cajon Ave, Suite 201
Victorville, CA 92392             Victorville, CA 92392

Each said envelope was then, on May 11, 2015, sealed and deposited in the United States mail at Los Angeles, California, the county in which I maintain my office, with postage fully prepaid.  I, further declare that I electronically served a copy of the same above document from electronic notification address (peabody198746@gmail.com) on May 11, 2015 to the following entities electronic notification addresses:

Appellate Defenders Inc., eservice-criminal@adi-sandiego.com

Attorney General, adieservice@doj.ca.gov

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 11, 2015, at Los Angeles, California.

MICHELLE CARLOS

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

Court of Appeal
Fourth Appellate District
Division Two
**ELECTRONICALLY FILED**

*2:41 pm, Apr 06, 2016*

By: E. Ceballos

THE PEOPLE,

     Plaintiff and Respondent,

v.

SAMUEL BAINES,

     Defendant and Appellant.

E062415

(Super.Ct.No. FVI1301562)

O P I N I O N

APPEAL from the Superior Court of San Bernardino County. John M. Tomberlin, Judge. Affirmed with directions.

Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Melissa Mandel, Donald W. Ostertag, and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

1

EXHIBIT-"B"

## I. INTRODUCTION

On May 24, 2013, defendant and appellant, Samuel Baines, and codefendant Anthony Johnson[1] entered a T-Mobile store in Victorville, California. Using a pellet gun, defendant and Johnson directed three employees to the back of the store where the store's safe and inventory were, had them assist in the commission of the robbery, then bound each employee's hands and ankles. Defendant and Johnson took money from the store's safe and cash registers, and took high-end phones from the store's inventory, along with the three employees' personal cell phones.

A jury convicted defendant of three counts of kidnapping to commit robbery (Pen. Code, § 209, subd. (b)(1), counts 1-3),[2] three counts of robbery (§ 211, counts 4-6) and one count of burglary (§ 459, count 7). The trial court found that defendant had two prior strike convictions, and denied defendant's *Romero*[3] motion to dismiss either or both of his prior strikes. The trial court sentenced defendant to 150 years to life in state prison.[4]

---

[1] Defendant and Johnson were tried separately.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

[3] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

[4] Defendant was sentenced to an indeterminate term of 25 years to life on count 1 and consecutive terms of 25 years to life for each of his convictions in counts 2 through 6. The court also sentenced defendant to six years on the count 7 burglary conviction, but stayed the sentence. (§ 654.)

On this appeal, defendant contends the kidnapping to commit robbery convictions (counts 1-3) must be reversed because the movement of the three employees was merely incidental to the commission of the robberies, and did not increase their risk of harm over and above that attendant to the robberies. Next, he argues that, if the kidnapping to commit robbery convictions are affirmed, the robbery sentences (counts 4-6) must be stayed pursuant to section 654. Lastly, he asserts that the trial court abused its discretion in denying his *Romero* motion to strike either or both of his prior strike convictions, and that his aggregate sentence violates the Eighth and Fourteenth Amendments' prohibitions against cruel and unusual punishment. We agree defendant's robbery sentences in counts 4, 5, and 6 must be stayed pursuant to section 654, but we otherwise affirm the judgment.

## II. STATEMENT OF FACTS

On May 24, 2013, Monica Gutierrez, Shyquaeta Lyle, and Gabriela Vargas were working at a T-Mobile store in Victorville, California. As Gutierrez was assisting a customer, she noticed two men, both wearing hats and sunglasses, and one carrying a duffle bag, walking back and forth in front of the store. After all the customers had left, the two men, later identified as defendant and Johnson, entered the store.

Defendant approached the counter where Gutierrez and Lyle were standing. He put his index finger to his mouth, signaling the women to be quiet, and pulled up his shirt to reveal a gun in the waistband of his pants. He then went into the back room, where Vargas was doing paperwork, and brought Vargas to the front counter. He ordered all three employees to lay face down on the ground behind the counter.

3

Johnson then instructed Lyle to lock up the store, which required Lyle, with Johnson's assistance, to pull the security gates down over the front doors and windows of the store. After the gates were pulled down, Lyle was taken back behind the counter and ordered to get back down on the floor.

The three employees were then taken to the back room of the store, where the store's safe and inventory cages were located. Throughout the robbery, the two men repeatedly instructed the three employees not to look at them. In the back room, defendant and Johnson ordered Lyle to lay on the floor, then bound Lyle's hands and ankles with duct tape. While brandishing the gun, defendant instructed Gutierrez and Vargas to place the higher-end phones, which were locked in inventory cages, into the duffle bag. Defendant held the gun at the back of Vargas's neck, and at times touched her neck with the gun, as he ordered her to fill the bag with merchandise. At the same time, Johnson went to the front of the store to take money from the registers. After the phones were placed in the duffle bag, defendant ordered Gutierrez to lay down on the floor, then taped Gutierrez's hands and ankles with duct tape.

The men then forced Vargas to give them the money from the safe in the back of the store. Vargas initially feigned ignorance about the money, but defendant threatened that "he was going to hurt her if she didn't get him the money" and that "she was going to leave in a body bag." Vargas relented, opened the safe, and placed the money inside the duffle bag. The men ordered Vargas to lay down on the floor, and they then bound her hands and ankles with duct tape.

Defendant and Johnson took approximately $25,000 to $26,000 in phones and approximately $3,000 to $4,000 in cash from the store. Defendant and Johnson then exited out the back door of the store, instructing the three employees not to look up.

Shortly after defendant and Johnson left the store, the three employees shut the back door, which defendant and Johnson had left slightly ajar, then untied each other. The employees went to the front of the store to call 911 and discovered that their personal cell phones were all missing. After the police arrived, the employees gave them an inventory of the items taken, as well as a copy of the store video surveillance footage. The video surveillance footage was played for the jury.

Gutierrez resigned from T-Mobile that very day and subsequently had to obtain counseling because she had difficulty being around people. She testified that her wrists were bruised from being bound so tightly.

One of the employees had the "Find My iPhone" application on her phone that had been stolen during the robbery. The police used this application to track the phone's location to a set of apartments in Los Angeles. The police went through the trash cans outside one of the apartments and found a lanyard with a set of keys and a key fob attached to it. Police later confirmed the key fob opened the inventory cages of the T-Mobile store. Later that evening, on May 24, 2013, the police entered the apartment that they suspected was connected to the robbery. Inside the living room of the apartment, the police found mail addressed to defendant, and a black Nike duffle bag that contained two rolls of duct tape, several purple Nitrile latex-style gloves, and a black "sporting-type

glove." The police also found a brand new Samsung smartphone, a plaid shirt that, based on the video surveillance footage, resembled what one of the perpetrators appeared to have worn during the robbery, as well as a "police scanner-style radio." A purple Nitrile-style glove was found inside the front left pocket of the plaid shirt.

Six days later, on May 30, 2013, the police tracked defendant's phone to a motel just outside the city limits of Hawthorne, California. The police saw defendant get into a car, and they followed him. When defendant began to drive erratically, the police officers performed a traffic stop and arrested defendant without incident. The officers recovered a black baseball hat and a silver-colored pellet gun, which they initially thought was an actual firearm, from the trunk of defendant's car. Both the baseball hat and the pellet gun were similar to those depicted in the video footage from the robbery.

During a police interview, which was conducted the day of his arrest, defendant admitted to participating in the robbery. He admitted using the gloves, duct tape, and the pellet gun in the robbery and admitted owning the plaid shirt and duct tape that were found in the apartment that police searched, but claimed the black duffel bag belonged to Johnson. Defendant claimed he was months behind on rent and was in danger of being evicted from his apartment, and he committed the crime to "get over the hump." He emphasized that he chose a T-Mobile store in Victorville because "it's quiet" and had less of a police presence than in other cities. He also explained that he wanted to commit a low-risk crime, and that he used a fake gun to ensure that nobody would be hurt. Lastly, he told the police interrogators that he duct taped the three employees because he "feared

they would run out," and because he wanted to "scare" them and to "[h]ave 'em

cooperate."

## III.  DISCUSSION

A. *Substantial Evidence Supports Defendant's Convictions of Kidnapping for Robbery*
*(Counts 1-3)*

Defendant was convicted in counts 1, 2, and 3 of kidnapping for purposes of

robbery (§ 209, subd. (b)) based on his movements of Lyle, Vargas, and Gutierrez, the

three employees, inside the T-Mobile store.  Defendant claims that insufficient evidence

supports these convictions.  He claims the evidence showed only that the three employees

were moved to various places inside the store solely to facilitate the robberies, and their

movements did not increase the risk of harm to them over and above the risk present in

the underlying robberies.  We disagree.

"*On appeal*, an appellate court deciding whether sufficient evidence supports a

verdict must determine whether the record contains substantial evidence—which we

repeatedly have described as evidence that is reasonable, credible, and of solid value—

from which a reasonable jury could find the accused guilty beyond a reasonable doubt.

[Citation.]  'In evaluating the sufficiency of evidence, "the relevant question on appeal is

not whether *we* are convinced beyond a reasonable doubt" [citation], but "whether '"*any*

rational trier of fact"' could have been so persuaded." . . .'  [Citation.]"  (*People v.*

*Hovarter* (2008) 44 Cal.4th 983, 996-997.)  We presume in support of the judgment "the

existence of every fact the trier could reasonably deduce from the evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

Kidnapping for robbery requires movement of the victim that "is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (§ 209, subd. (b)(2).)  As to the "beyond that merely incidental" prong, the jury considers the scope and nature of the movement, which includes the actual distance a victim is moved, as well as the context of the environment in which the movement occurred. (*People v. Martinez* (1999) 20 Cal.4th 225, 233; *People v. Leavel* (2012) 203 Cal.App.4th 823, 833.) Whether the movement of the victims was merely incidental to the robbery must be made in the context of the totality of the circumstances attending the robbery (*People v. James* (2007) 148 Cal.App.4th 446, 454 (*James*)), as there is no minimum distance a defendant must move a victim to satisfy this prong (*People v. Vines* (2011) 51 Cal.4th 830, 870).  A "movement that is *not* necessary to a robbery is also *not* merely incidental to it. . . . Lack of necessity is a sufficient basis to conclude a movement is not merely incidental . . . ." (*James*, *supra*, at p. 455, fns. omitted.)

Regarding the second prong, "the risk of harm 'arises from the perpetrator's use of force or fear, and from brief movements incidental to the robbery.' [Citation.]" (*James*, *supra*, 148 Cal.App.4th at p. 455.)  Factors that "increase[] the risk of harm to the victim over and above that necessarily present in" the robbery include a decreased likelihood of detection, danger inherent in a victim's foreseeable attempts to escape, and the attacker's

8

enhanced opportunity to commit additional crimes. (*People v. Martinez*, *supra*, 20 Cal.4th at p. 232; *People v. Simmons* (2015) 233 Cal.App.4th 1458, 1471.) The increased risk of harm may include psychological harm. (*People v. Nguyen* (2000) 22 Cal.4th 872, 886; *People v. Robertson* (2012) 208 Cal.App.4th 965, 984.)

*Vines* is instructive regarding the asportation requirement for kidnapping for robbery. In *Vines*, the defendant forced a McDonald's manager at gunpoint to open the restaurant's safe. After taking the cash from the safe, the defendant walked the manager to the back of the restaurant and ordered the manager, along with three other employees, to head downstairs into the basement. The defendant locked the employees in the freezer while he completed the robbery and escaped. (*People v. Vines*, *supra*, 51 Cal.4th at p. 870.) The court concluded that sufficient evidence of asportation supported the defendant's conviction on four counts of kidnapping to commit robbery, as the "scope and nature" of moving the manager, along with the three other victims, from the front of the store, down a stairway and into the freezer, was not "merely incidental" to the commission of the robbery. (*Id.* at p. 871.) The court explained that "the movement subjected the victims to a substantially increased risk of harm because of . . . the decreased likelihood of detection, and the danger inherent in the victims' foreseeable attempts to escape such an environment." (*Ibid.*)

9

Because there is no minimum distance required to satisfy the "beyond that merely incidental" prong of kidnapping for robbery (§ 209, subd. (b)(2)), courts have upheld kidnapping for robbery convictions where the movement of the victims did not span a great distance. (*People v. Simmons*, *supra*, 233 Cal.App.4th at p. 1472 [movement from exterior to interior of home "not only increased the *risk* of harm to the victims, but it also caused additional harm *in fact*" in the form of psychological trauma to one of the victims]; *People v. Leavel*, *supra*, 203 Cal.App.4th at pp. 835-836 [movement from kitchen to bedroom of same home not "merely incidental" to commission of the robbery, because it decreased the possibility of detection, escape or rescue, and enhanced the opportunity to commit additional crimes against the victim]; *People v. Cass* (1960) 178 Cal.App.2d 305, 307 [forcible removal of store clerk from one part of the store to another to obtain money from a cash box supported kidnapping for robbery conviction].)  Courts have also reversed kidnapping for robbery convictions where the victims were moved short distances. (*People v. Morrison* (1971) 4 Cal.3d 442, 443 [movement of victim up and down stairs and into various rooms within a private residence was "merely incidental to the robbery and did not substantially increase the risk of harm beyond that inherent in the robbery itself."]; *People v. Daniels* (1969) 71 Cal.2d 1119, 1140 [movement of victims inside the premises was incidental to the crime]; *People v. John* (1983) 149 Cal.App.3d 798, 803, 806-807 [movement of victim approximately 465 feet within the same location, where "none of it was physically violent" was merely incidental to the

robbery and did not substantially increase the risk of harm beyond that inherent in the robbery].)

Here, defendant and Johnson moved the three employees throughout the store. They forced Lyle to lock and secure the front door of the store before moving her to the back of the store, where the store's safe and inventory were located. They forced Gutierrez to the back of the store and, while defendant brandished a gun, had her transfer the store's high-end phones from the inventory cages to defendant and Johnson's duffel bag. They moved Vargas to and from the back of the store, where, at gunpoint, she was forced to provide defendant and Johnson with access to the store's safe, along with its inventory of high-end phones.

It was not necessary for defendant to move the three employees around the T-Mobile store in order to commit the robbery, as defendant and Johnson could have obtained the key fob and the combination to the safe from the three employees, restrained them, then taken the store's cash and inventory. Because the movement of the three employees was not necessary to the commission of the robbery, the movement was not "merely incidental" to the robbery. (*James*, *supra*, 148 Cal.App.4th at p. 455.)

Furthermore, defendant "increase[d] the risk of harm to [the three employees] over and above that necessarily present in[] the intended underlying offense" (§ 209, subd. (b)(2)) when he forced Lyle to lock and secure the store by pulling down the security gates over the front doors and windows, and when he and Johnson took the three employees' personal cell phones. These actions "'decreased [the] likelihood of

11

detection'" and it "'enhanced [defendant's] opportunity to commit additional crimes'"
(*People v. Martinez*, *supra*, 20 Cal.4th at p. 232; *People v. Simmons*, *supra*, 233
Cal.App.4th at p. 1471), as the three employees were prevented from communicating
electronically with anyone outside the store who may have been able to offer assistance
or report the ongoing crimes to the authorities.  Furthermore, by lowering the security
gates and moving the three employees to the back of the store, people outside the store
may not have been aware of the ongoing robberies, and, even if they were, would have
been unable to enter the store to provide assistance.  In addition, the movement of the
three employees also increased the risk of harm to the victims, as the employees could
have attempted to resist, fight back, or flee, which could have resulted in further violence,
including the possibility that defendant would fire his pellet gun at any or all of the
employees.  Indeed, defendant pointed his gun at Vargas, at times touching it to her neck,
and threatened to have her leave "in a body bag" if she failed to cooperate with him.  The
movement of the employees "not only increased the *risk* of harm to the [employees], but
it also caused additional harm *in fact*" in the form of physical and psychological trauma
to Gutierrez.  (*People v. Simmons*, *supra*, 233 Cal.App.4th at p. 1472.)

Defendant relies primarily on this court's two-to-one decision in *People v. Hoard*
(2002) 103 Cal.App.4th 599 in contending that the movement of the three employees
here was merely incidental to the robbery, and did not increase their risk of harm.  In
*Hoard*, the defendant robbed a jewelry store by forcing the two employees about 50 feet
to an office at the back of the store.  There, the defendant restrained the employees'

ankles and wrists with duct tape, and he duct taped their mouths, before he began taking jewelry from the store's display cases. When customers entered the store, he told them that it was closed for maintenance or performing inventory. The court majority concluded that the defendant's movement of the victims "was 'merely incidental' to the robbery" and that "the movement did not substantially increase the risk of harm" to the victims. (*Id.* at pp. 602, 607.)

*Hoard* is readily distinguishable from the present facts. In *Hoard*, the defendants did nothing more than briefly move and immobilize the jewelry store employees before completing the robbery. Here, defendant forced the employees to assist in the robbery by having Lyle lock and secure the premises, forcing Gutierrez and Vargas to the back of the store to load the phones into defendant's duffle bag, and then compelling Vargas to provide defendant and Johnson with access to the store's cash. Only after defendant had received assistance from each employee did he restrain them with duct tape. As noted, it was not necessary for defendant to move the three employees around the store in order to commit the robbery. The concurrence and dissent in *Hoard* recognized that a number of cases had equated "incidental" with "necessary," and it was critical that the *Hoard* majority "offer[ed] no sound reason why the equating of 'incidental' and 'necessary' is insupportable." (*People v. Hoard*, *supra*, 103 Cal.App.4th at p. 612 (conc. & dis. opn. of Ramirez, P.J.).) Indeed, at least one case since *Hoard* has agreed that, where the movement of the victims was not necessary for the commission of the robbery, the movement was not incidental to it. (*James*, *supra*, 148 Cal.App.4th at p. 455.)

Furthermore, the *Hoard* concurrence and dissent correctly explained that, "regardless of whether 'incidental' and 'necessary' may properly be equated, the question to be answered . . . is whether there was a sufficient basis upon which this jury could reasonably conclude that the movements of the victims were not incidental to the robberies," and that the "movement increased the risk of harm to the victims over and above that necessarily present" in the robberies. (*People v. Hoard*, *supra*, 103 Cal.App.4th at p. 614 (conc. & dis. opn. of Ramirez, P.J.).)  Based on the record, there is a sufficient basis upon which the jury could reasonably conclude that the movements of the three employees were not merely incidental to the robberies.

There is also a sufficient basis upon which the jury could have reasonably concluded that the movements of these employees increased their risk of harm beyond the risk attendant to the robberies.  As noted, defendant warned Vargas that she would "leave in a body bag" if she failed to cooperate, and Gutierrez sustained both physical and psychological injuries as a result of the incident.  Furthermore, it was foreseeable that the employees could have resisted or attempted to escape, which also increased their risk of harm over and above that necessarily present in the robberies.  Based on the whole record, substantial evidence supports defendant's convictions of kidnapping for robbery.

B. *Defendant's Robbery Sentences (Counts 4-6) Must Be Stayed*

At sentencing, the trial court determined that it would not stay the robbery sentences pursuant to section 654, explaining: "You can rob somebody.  It's not so much that you can kidnap them without robbing them and still have a kidnapping for the

14

purpose of robbery. What I'm thinking of is they also robbed and kidnapped. [¶] So not only did they commit a robbery, but they actually took someone into a place where their safety was at much greater risk. Taking someone into a back room and duc[t]-taping them, moving them around the store, those are all separate things that seemed to me should be treated and there should be responsibility for. [¶] And it's different than just a straight, give me the money, and out the door. So I'm not sure whether or not I have discretion. But I put that analysis on the record so that I could try and explain why, based on the fact that there are separate crimes that were committed of a different type than just a robbery with an increased danger to the victims in this case, . . . , where I . . . come to an analysis that says I could grant the relief under [section] 654. I think it's inappropriate for me to do so, and would decline to do it in any event."

Defendant argues that, pursuant to section 654, he cannot be sentenced for both his kidnapping to commit robbery (counts 1-3) and robbery (counts 4-6) convictions. We agree that defendant's robbery sentences must be stayed.

A defendant may not be punished both for robbery and for kidnapping for the purpose of robbery, where both crimes were committed pursuant to a single intent and objective of robbing the victims. (*People v. Lewis* (2008) 43 Cal.4th 415, 519, overruled on other grounds in *People v. Black* (2014) 58 Cal.4th 912, 919-921; *People v. Beamon* (1973) 8 Cal.3d 625, 639-640.) Section 654 limits "punishment for multiple convictions arising out of either an act or omission or a course of conduct deemed to be indivisible in

time, . . . wherein the accused entertained a principal objective to which other objectives, if any, were merely incidental." (*People v. Beamon*, *supra*, at p. 639, fn. omitted.)

"'Whether the facts and circumstances reveal a single intent and objective within the meaning of Penal Code section 654 is generally a factual matter; the dimension and meaning of section 654 is a legal question.' [Citation.] We apply the substantial evidence standard of review to the trial court's implied finding that a defendant harbored a separate intent and objective for each offense. [Citations.]" (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1414.) We view the evidence in the light most favorable to the judgment, drawing all reasonable deductions in favor of the judgment. (*People v. Boyer* (2006) 38 Cal.4th 412, 480.) If the verdict is supported by substantial evidence, we are bound to give due deference to the trier of fact and to not retry the case. (*People v. Snow* (2003) 30 Cal.4th 43, 66.) We do not reweigh the evidence; rather, we evaluate whether the evidence presented at trial and the reasonable inferences that could be derived from the evidence support the jury's conclusions. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

Here, in committing the kidnappings for robbery and the robberies of the three employees, the evidence showed defendant's "principal objective" was to commit the robbery of the three employees. (*People v. Beamon*, *supra*, 8 Cal.3d at p. 639.) During the police interview, defendant told the police that he restrained the three employees with duct tape because he "didn't wanna take a chance of" the employees escaping, and because he wanted "to scare" them, and to "[h]ave 'em cooperate." However, his

objective of scaring the employees into cooperating with defendant and Johnson was "merely incidental" to, and not independent of, the robberies themselves. (*Ibid.*) Accordingly, pursuant to section 654, the sentences for the robbery convictions in counts 4, 5, and 6 must be stayed.

C. *The Trial Court Did Not Abuse Its Discretion in Declining to Dismiss Either of Defendant's Prior Strikes*

    1. Background—Denial of Defendant's *Romero* Motion

After the trial court found defendant's two prior strike enhancement allegations true, defendant moved to dismiss one or both of his prior strikes for purposes of sentencing under *Romero*. Defendant wrote a letter, which his defense counsel read to the court.

In the letter, defendant emphasized that he suffered his first strike in 1989 for second degree robbery (§ 211), and his second strike in 1994 for attempted second degree robbery (§§ 211, 664). Defendant was released on parole in 1997 after serving three years in "fire camp." He "did not have any write-ups in prison, fire camp, or parole," "was not in and out of jail being a menace to society or doing drugs," and was employed from 1998 through 2013. He committed no further crimes until he committed the present crimes in May 2013. Defendant represented that he only committed the present crimes because he was three months behind on rent, had run out of unemployment benefits, and, "in his mind, he saw no other option but to resort to a crime that he felt he could complete

with no one getting hurt." Defendant used the pellet gun because he felt he could commit the crime "with no one getting hurt" and "that would be low risk to everyone involved."

Defendant also pointed out that he was 51 years old, and had recently found religion. He implored the court to reduce the fines and fees, strike the priors, and sentence him to seven years to life on each of the kidnapping to commit robbery convictions (counts 1-3) with the sentences on the robbery convictions (counts 4-6) running concurrent to the sentences imposed on counts 1 through 3.

The trial court acknowledged it had read defendant's letter, along with the probation report, and was "not close to striking a strike." The court was troubled with defendant's assertion that he felt he had no other option but to commit the felony, and it was not convinced by defendant's argument that he "didn't want to hurt anybody, didn't want to scare anyone," particularly when defendant threatened to place one of the employees in a body bag. Although defendant did not use a real gun in the commission of the offenses, the trial court explained that "a gun that shoots BBs can certainly hurt people." The court explained it was not convinced that defendant should be treated more leniently, as it could not "even get close to countenancing why under these circumstances he's justified in committing these serious and dangerous crimes."

2. Analysis

Defendant claims the trial court abused its discretion in declining to exercise its discretion, under section 1385 and *Romero*, to dismiss either or both of defendant's two prior strikes "in furtherance of justice" for purposes of sentencing.

18

As both parties agree, a "court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) "[A] court's decision to strike a qualifying prior conviction is discretionary. [Citation.] As such, a court's decision *not* to strike a prior necessarily requires some exercise of discretion." (*Id.* at p. 375.) We conclude the trial court did not abuse its discretion in declining to strike either, or both, of defendant's prior strike convictions.

In deciding whether to exercise its discretion to dismiss a prior strike conviction, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [spirit of the "Three Strikes" law], in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161; *People v. Leavel*, *supra*, 203 Cal.App.4th at pp. 836-837.) There is a legislative presumption that a court acts properly whenever it sentences a defendant in accordance with the Three Strikes law, and a court is not required to state its reasons for declining to exercise its discretion under section 1385. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 376; *People v. Gillispie* (1997) 60 Cal.App.4th 429, 433.)

Defendant claims the trial court abused its discretion in denying his *Romero* motion because it considered only the nature and circumstances of his current offenses

19

without considering the age of his two prior strikes, his minimal criminal history since his release from prison in 1997, or "the sentence [he] would have received absent the Three Strikes enhancement." Defendant is incorrect. The trial court denied defendant's *Romero* motion after noting on the record that it had read and considered defendant's submission, and the probation report, all of which addressed "the nature and circumstances of [the] present felonies and prior serious and/or violent felony convictions, and the particulars of [defendant's] background, character, and prospects . . . ." (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)

Both defendant's past strikes and his current offenses involved the use of violence. According to the probation report, defendant was 25 years of age when he suffered his first strike in 1989 for second degree robbery. (Pen. Code, § 211.) He was released on parole in 1991, after serving two years of his sentence, but suffered his second strike for attempted second degree robbery (Pen. Code, §§ 211, 664) approximately three years later in 1994, when he was 31 years old. Furthermore, in addition to his two prior strikes, defendant was convicted of five separate felonies between 1981 and 1986, including two burglary convictions (Pen. Code, § 459), one conviction each for receiving stolen property (Pen. Code, § 496), unlawful driving or taking a motor vehicle (Veh. Code, § 10851, subd. (a)), and being a felon in possession of a firearm (Pen. Code, § 12021).

Although defendant "suffered no further felony convictions . . . other than minor traffic offenses"[5] between his 1994 strike and the current offense, at least one court has

---

[5] In 1998 and 2006, defendant was convicted in Las Vegas, Nevada of misdemeanor negligent driving, and misdemeanor speeding, respectively.

explained that "the number of [defendant's] prior convictions operates as a factor in aggravation, as may the nature of his prior and present crimes and the timing with which they were committed." (*People v. Bishop* (1997) 56 Cal.App.4th 1245, 1250-1251.) Thus, defendant's five prior felony convictions, along with his two prior strikes, are factors that support the trial court's determination not to strike either or both of defendant's prior strikes.

In light of the nature and circumstances of both his present felonies and the prior violent felony convictions, the trial court reasonably determined that defendant fell within the spirit of the Three Strikes law, and it did not abuse its discretion when it declined to dismiss either or both of defendant's prior strikes.

D. *Defendant's Sentence is Not Cruel or Unusual*

Defendant contends his sentence constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution. We reject this contention.

A sentence violates the federal Constitution if it is "grossly disproportionate" to the severity of the crime. (U.S. Const., 8th & 14th Amends.; *People v. Carmony* (2005) 127 Cal.App.4th 1066, 1076.) Defendant argues that his sentence "offends the principles set forth in the Eighth and Fourteenth Amendments of the United States Constitution," particularly where he committed a "crime in which no one was injured." As noted, Gutierrez suffered both physical and psychological harm due to defendant's commission of the crimes. Furthermore, the United States Supreme Court has upheld statutory

21

schemes, such as California's Three Strikes law, that result in life imprisonment for recidivists upon a third conviction, even for nonviolent felonies, and in the face of challenges that such sentences violate the federal constitutional prohibition against cruel and unusual punishment. (See *Ewing v. California* (2003) 538 U.S. 11, 18, 30-31 [25-year-to-life sentence under the Three Strikes law for the theft of three golf clubs worth \$399 apiece]; *Lockyer v. Andrade* (2003) 538 U.S. 63 [two consecutive 25-year-to-life terms for two separate thefts of videotapes worth \$150].) As *Ewing* recognized, the protection afforded by the Eighth Amendment is narrow and applies only in the "'exceedingly rare'" and "'extreme'" case. (*Ewing v. California*, *supra*, 538 U.S. at p. 21.) Defendant has not demonstrated that this is the exceedingly rare and extreme case that violates the federal Constitution, and we reject his claim that his sentence of 25 years to life on each of counts 1 to 3, as a third strike offender, is "grossly disproportionate" to the kidnappings of Gutierrez, Lyle, and Vargas in the commission of the robberies of the three employees.

## IV. DISPOSITION

Defendant's sentence is modified to stay the 25-year-to-life terms on defendant's robbery convictions in counts 4, 5, and 6. Pursuant to the modification, the trial court is directed to prepare a supplemental sentencing minute order and an amended abstract of judgment to reflect that defendant's 25-year-to-life sentences on counts 4, 5, and 6 have been stayed pursuant to section 654. The trial court is also directed to forward a certified

copy of the amended abstract of judgment to the Department of Corrections and

Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

CODRINGTON

J.

SLOUGH

J.

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF CALIFORNIA**, | ) | Case No. _____ |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | |
| v. | ) | Court of Appeal No. |
| | ) | E062415 |
| **SAMUEL BAINES**, | ) | |
| | ) | Superior Court No. |
| Defendant and Appellant. | ) | FVI 1301562 |
| _____ | ) | |

FROM THE JUDGMENT OF THE SUPERIOR COURT FOR THE COUNTY OF SAN
BERNARDINO, THE HONORABLE JOHN M. TOMBERLIN,  JUDGE PRESIDING

## PETITION FOR REVIEW

**JENNIFER PEABODY**
State Bar No. 198746
**CORONA & PEABODY**
Attorneys at Law
617 S. Olive Street
Suite 810
Los Angeles, CA 90014

(213) 488-0022
(213) 488-0032 Fax
Email: peabody198746@gmail.com

Attorney for Appellant
By Appointment of the Court of Appeal
Under Appellate Defenders Inc.,
Independent Case System.

EXHIBIT-"C"

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PETITION FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL AND FACTUAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . 1

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

NECESSITY FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT I
      THE KIDNAPPING FOR ROBBERY CONVICTIONS IN COUNTS 1, 2
      AND 3 MUST BE REVERSED BECAUSE THERE WAS INSUFFICIENT
      EVIDENCE TO SUPPORT THE ASPORTATION ELEMENT OF THE
      OFFENSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    Summary of the Arguments and Findings Below . . . . . . . . . . . . 5

      B.    Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      C.    The Movement of the Employees Was Merely Incidental to the
           Commission of the Robbery and Thus, The Convictions in Counts 1, 2
           and 3 Must be Reversed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      D.    The Movement Did Not Increase the Risk of Harm to the Store
           Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT II
      THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO STRIKE
      ANY OF APPELLANT'S STRIKES ON ANY OF THE COUNTS AND HIS
      SENTENCE AMOUNTS TO CRUEL AND UNUSUAL PUNISHMENT, IN
      VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS . . . . 16

      A.    Summary of the Argument and Findings Below . . . . . . . . . . . . 16

      B.    Applicable Law on *Romero* Motions . . . . . . . . . . . . . . . . . . . 17

      C.    The Trial Court Abused Its Discretion In Failing to Strike Any of
           Appellant's Prior Strikes on Any of the Charged Offenses . . . . . . . . . . . . 18

i

D.      Appellant's Sentence Violates the Eighth and Fourteenth Amendments . 22

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF COMPLIANCE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Duncan v. Henry* (1995) 513 U.S. 364 [115 S.Ct. 887, 130 L.Ed.2d 865] . . . . . . . . . . . . 2

*Harmelin v. Michigan* (1991) 501 U.S. 957 [111 S.Ct. 2680, 115 L.Ed.2d 836] . . . 22, 23

*Hutto v. Davis* (1982) 454 U.S. 370 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Winship* (1970) 397 U.S. 358 [90 S.Ct. 1068, 25 L.Ed.2d 368] . . . . . . . . . . . . . 7, 15

*Jackson v. Virginia* (1979) 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560] . . . . . . . . . . . 7

*Keeney v. Tamayo-Reyes* (1992) 504 U.S. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Lockyear v. Andrade* (2003) 538 U.S. 63 [123 S.Ct. 1166, 155 L.Ed.2d 144] . . . . . . . . 23

*Robinson v. California* (1962) 370 U.S. 660 [82 S.Ct. 1417, 8 L.Ed.2d 758] . . . . . . . . . 22

*Schulp v. Delo* (1995) 513 U.S. 298 [115 S.Ct. 851, 130 L.Ed.2d 808] . . . . . . . . . . . . . 7

*Solem v. Helm* (1983) 463 U.S. 277 [103 S.Ct. 3001, 77 L.Ed.2d 637] . . . . . . . . . . 22, 23

*Sullivan v. Louisiana* (1993) 508 U.S. 275 [113 S.Ct. 2078, 124 L.Ed.2d 182] . . . . . . . . 7

*Thompson v. Louisville* (1960) 362 U.S. 199 [80 S.Ct. 624, 4 L.Ed.2d 654] . . . . . . . . . . 7

*United States v. Bajakajian* (1998) 524 U.S. 321 [118 S.Ct. 2028, 141 L.Ed.2d 314] . . 23

*Wright v. West* (1992) 505 U.S. 277 [112 S.Ct. 2482, 120 L.Ed.2d 225] . . . . . . . . . . . . 7

## STATE CASES

*In re Crumpton* (1973) 9 Cal.3d 463 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Earley* (1975) 14 Cal.3d 122 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

*People v. Bishop* (1997) 56 Cal.App.4th 1245 . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19, 21

*People v. Burke* (1956) 47 Cal.2d 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*People v. Carmony* (2004) 33 Cal.4th 367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*People v. Daniels* (1988) 202 Cal.App.3d 671 . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*People v. Ellis* (1971) 15 Cal.App.3d 66 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

*People v. Garcia* (1999) 20 Cal.4th 490 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 21

*People v. Hoard* (2002) 103 Cal.App.4th 599 . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*People v. Isitt* (1972) 55 Cal.App.3d 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*People v. John* (1983) 149 Cal.App.3d 798 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*People v. Killean* (1971) 4 Cal.3d 423 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Kunkin* (1973) 9 Cal. 3d 245 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*People v. Lara* (1974) 12 Cal.3d 903 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Laursen* (1972) 8 Cal.3d 192 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*People v. Martinez* (1999) 20 Cal.4th 225 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*People v. Morrison* (1971) 4 Cal.3d 442 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Power* (2008) 159 Cal.App.4th 126 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*People v. Rayford* (1994) 9 Cal.4th 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

*People v. Redmond* (1969) 71 Cal. 2d 745 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*People v. Rowland* (1992) 4 Cal.4th 238 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*People v. Smith* (1971) 4 Cal.3d 426 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Snow* (2003) 30 Cal.4th 43 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 . . . . . . . . . . . . . . . . . . . *passim*

*People v. Tenner* (1993) 6 Cal.4th 559 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*People v. Timmons* (1971) 4 Cal.3d 411 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Vines* (2011) 51 Cal.4th 830 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*People v. Washington* (2005) 127 Cal.App.4th 290 . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Williams* (1970) 2 Cal.3d 894 . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17, 20

## FEDERAL STATUTES

Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Eighth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## STATE STATUTES

Cal. Const. Art. I, § 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cal. Const. Art. I, § 17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cal. Rules of Court, Rule 8.500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 24

Pen. Code § 209 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Pen. Code, § 1385 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## MISCELLANEOUS

Ballot Pamp., Gen. Elec. (Nov. 8, 1994) argument in favor of Prop. 184, p. 36 . . . . . . . 20

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF CALIFORNIA**, | ) | Case No. _____ |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | |
| v. | ) | Court of Appeal No. |
| | ) | E062415 |
| **SAMUEL BAINES**, | ) | |
| | ) | Superior Court No. |
| Defendant and Appellant. | ) | FVI 1301562 |
| | ) | |

## PETITION FOR REVIEW

TO THE HONORABLE TANI CANTIL-SAKAUYE, CHIEF JUSTICE

AND TO THE HONORABLE ASSOCIATE JUSTICES

OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:

Appellant/Petitioner respectfully petitions this Honorable Court, pursuant to

Rule 8.500 of the California Rules of Court, to grant review in the above entitled

case following an unpublished decision by the Court of Appeal, Fourth Appellate

District, Division Two filed on April 6, 2016, affirming appellant's convictions,

but modifying his sentence to stay the sentences of 25 years to life imposed on

Counts 4, 5 and 6.

A copy of the opinion is attached hereto as an Appendix.

## PROCEDURAL AND FACTUAL STATEMENT

For purposes of the instant Petition for Review only, appellant accepts the

procedural and factual statements in the Opinion of the Court of Appeal.

1

## QUESTIONS PRESENTED

1.  Whether the movement of cell phone store employees throughout the store during the course of an armed robbery in order to close the security gate, unlock the store safe and cash register and load items into bags is sufficient to support convictions for kidnapping for robbery in violation of Penal Code section 209.

2.  Whether the trial court erred in denying appellant's motion to strike his priors and whether appellant's sentence of 75 years to life, following the denial of his motion to strike his prior convictions, constitutes cruel and unusual punishment within the meaning of the Eighth and Fourteenth Amendments.

## NECESSITY FOR REVIEW

This petition presents claims that are worthy of review under Rule 8.500(b) of the California Rules of Court to settle important issues of law which affect the state and federal constitutional rights of criminal defendants and to secure uniformity of decisions within the state of California. These issues are also presented to exhaust state remedies for claimed violations of rights arising under the United States Constitution. (See *Keeney v. Tamayo-Reyes* (1992) 504 U.S. 1, 9; *Duncan* v. *Henry* (1995) 513 U.S. 364, 365-366 [115 S.Ct. 887, 130 L.Ed.2d 865].)

Review is necessary because the various Courts of Appeal are now rendering the requirement, that the movement as required for a violation of Penal Code section 209 not be merely incidental, virtually meaningless.  In assessing the legality of a defendant's kidnapping for robbery conviction, the *Daniels* test was intended to prevent the application of the kidnapping for robbery statute to inappropriate factual circumstances.  (*People v. Ellis* (1971) 15 Cal.App.3d 66, 69.)  "[T]he primary purpose of the [kidnapping for robbery] statute is to impose harsher criminal sanctions to deter the carrying away of persons during the commission of a robbery in a manner which substantially increases the risk that someone will suffer grave bodily or psychic injury or even death." (*People v. Laursen* (1972) 8 Cal.3d 192, 198.)  Kidnapping for robbery, therefore, "does not embrace a broad spectrum of unlawful conduct" but is instead "limited to a highly constricted body of homogenous conduct."  (*People v. Isitt* (1972) 55 Cal.App.3d 23, 29-30.)  "An overly broad interpretation [of the kidnapping for robbery statute] results in injustice, in part because of the difficulty in distinguishing kidnapping for robbery from the lesser crimes [of] simple kidnapping and robbery, and in part because the penalty for aggravated kidnapping is considerably more onerous than for the lesser offenses combined." (*People v. Daniels* (1988) 202 Cal.App.3d 671, 675.)  Courts in this state are using an overly broad interpretation of the asportation element to uphold convictions for violating Penal Code section 209.

3

Review is necessary because the trial and appellate courts need guidance as to when the degree of movement is or is not substantial and when the movement increases the risk of harm necessarily present in the intended robbery. Review should also be granted to confirm that the movement of the victim herein was merely incidental to the robbery and did not substantially increase the risk of harm to the employees over and above that involved in the robbery itself.

Review should also be granted to determine whether appellant's sentence of 75 years to life, following the denial of his motion under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504, was cruel and unusual in violation of appellant's Eight and Fourteenth Amendment rights.

## ARGUMENT I

## THE KIDNAPPING FOR ROBBERY CONVICTIONS IN COUNTS 1, 2 AND 3 MUST BE REVERSED BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE ASPORTATION ELEMENT OF THE OFFENSE

A.    Summary of the Arguments and Findings Below

In his Opening Brief, appellant argued that there was insufficient evidence to support appellant's convictions for kidnapping for robbery in Counts 1, 2 and 3. Appellant argued that there was not substantial evidence to support the conclusions of the trier of fact because, under the totality of circumstances, the movement of each of the cell phone store employees was merely incidental to the commission of the robberies in Counts 4, 5 and 6. (AOB 8-18.) As such, appellant argued, the asportation element of the crime of kidnapping for robbery was not satisfied and because the element was not proven, the conviction must be reversed. (AOB 12-15.) Appellant further argued that even if the movement was more than incidental, the asportation element of kidnapping for robbery was still not met because the movement did not increase the inherent risk of harm to the victim. (AOB 16-18.)

Respondent argued that the movement of the T Mobile store employees "went beyond that merely incidental to the robbery of the store." (RB 9.) Respondent argued that the movements of Lyle to the front door, where she was lifted up to pull the cage down, and then to the side of the store to pull down more

5

cages and then back to the front counter were "all movements excessive and

gratuitous to the robbery." (RB 9.) Respondent also argued that the movement of

Gutierrez and Vargas from the front of the store to the back of the store or vice

versa was gratuitous and not necessary to complete the robbery. (RB 9-10.)

According to respondent, appellant and his accomplice could have "simply asked

for the key fob to the inventory cages and the code to the safe" and left the women

where they initially were. (RB 10.)

 The Court of Appeal found sufficient evidence to support appellant's

convictions for kidnapping for robbery. (Opinion, p. 11-14.) The Court found that

because "[i]t was not necessary to move the three employees around the T-Mobile

store in order to commit the robbery, as defendant and Johnson could have

obtained the key fob and the combination to the safe from the three employees,

restrained them, then taken the store's cash and inventory," "the movement was

not "merely incidental" to the robbery." (Opinion, p. 11.) The Court further found

that appellant increased the risk of harm to the three employees "when he forced

Lyle to lock and secure the store by pulling down the security gates over the front

doors and windows, and when he and Johnson took the three employees' personal

cell phones." (Opinion, p. 11.) The Court concluded that these actions enhanced

appellant's opportunity to commit additional crimes, ensured no one could enter to

provide assistance, and increased the "risk of harm to the victims, as employees

could have attempted to resist, fight back, or flee, which could have resulted in further violence, including the possibility that defendant would fire his pellet gun at any or all of the employees." (Opinion, p. 12.) Appellant disagrees and submits that review should be granted to determine the nature and quality of evidence necessary to support the asportation element of kidnapping for robbery.

B.    Applicable Law

The state and federal constitutions require that the prosecution prove every element of any charged offense beyond a reasonable doubt. (U.S. Const., Amends. 5 and 14; Cal. Const Art. I, § 15; *In re Winship* (1970) 397 U.S. 358 [90 S.Ct. 1068, 25 L.Ed.2d 368]; *Sullivan v. Louisiana* (1993) 508 U.S. 275, 277-278 [113 S.Ct. 2078, 124 L.Ed.2d 182]; *People v. Tenner* (1993) 6 Cal.4th 559, 566.) The Due Process Clause of the Fourteenth Amendment requires that there can be no conviction without sufficient evidence. (*Jackson v. Virginia* (1979) 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560]; *People v. Rowland* (1992) 4 Cal.4th 238, 269.) When reviewing an insufficiency of the evidence claim, the test is whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt. (*Schulp v. Delo* (1995) 513 U.S. 298, 330 [115 S.Ct. 851, 130 L.Ed.2d 808]; *Wright v. West* (1992) 505 U.S. 277, 290 [112 S.Ct. 2482, 120 L.Ed.2d 225]; *Thompson v. Louisville* (1960) 362 U.S. 199 [80 S.Ct. 624, 4 L.Ed.2d 654].)

"Evidence which merely raises a strong suspicion of the defendant's guilt is

7

not sufficient to support a conviction.  Suspicion is not evidence, it merely raises a

possibility, and this is not a sufficient basis for an inference of fact." (*People v.*

*Kunkin* (1973) 9 Cal. 3d 245, 250; *People v. Redmond* (1969) 71 Cal. 2d 745,

755.)  "On appeal, [the court] review[s] the whole record in the light most

favorable to the judgment below to determine whether it discloses substantial

evidence--that is, evidence that is reasonable, credible and of solid value" of guilt.

(*People v. Snow* (2003) 30 Cal.4th 43, 66.)

Penal Code section 209, subdivision (b)(2): "only appl[ies] if the movement

of the victim is beyond that merely incidental to the commission of, and increases

the risk of harm to the victim over and above that necessarily present in, the

intended underlying offense." (Pen. Code §209, subd. (b)(2).)  "The rationale for

this requirement is that, given 'the breadth of the statutory definition of

kidnapping, ... it "could literally overrun several other crimes, notably robbery and

rape, . . . since detention and sometimes confinement, against the will of the

victim, frequently accompany these crimes. . . . It is a common occurrence in

robbery, for example, that the victim be confined briefly at gunpoint or bound and

detained, or moved into and left in another room or place."' [Citations.]  Our

Supreme Court concluded that 'such incidental movements are not of the scope

intended by the Legislature in prescribing the asportation element of the same

crime.'" (*People v. Power* (2008) 159 Cal.App.4th 126, 137-138, citing *People v.*

8

*Daniels, supra*, 71 Cal.2d at p. 1134.)

In *People v. Daniels, supra*, 71 Cal.2d 1119, this Court announced a two-part test for analyzing kidnapping for robbery charges. The *Daniels'* Court stated, that courts will look at the totality of circumstances and consider whether: (1) the movement constituting kidnapping was not incidental to the greater crime; and (2) the movement substantially[1] "increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (*Id.* at p. 1139.) "These two elements are not mutually exclusive but are interrelated." (*People v. Vines* (2011) 51 Cal.4th 830, 870.) Movements of a victim can constitute kidnapping for purpose of robbery *only if both prongs* of this test are satisfied. (*In re Earley* (1975) 14 Cal.3d 122, 129 [emphasis added].) "The clear import of *Daniels* is that there must be both asportation not merely incidental to the associated robbery, and a substantial increase in the risk of harm over and above that necessarily present in the robbery itself. (Citation)." (*People v. John* (1983) 149 Cal.App.3d 798, 805.)

    C.    The Movement of the Employees Was Merely Incidental to the Commission of the Robbery and Thus, The Convictions in Counts 1, 2 and 3 Must be Reversed

The first prong of the *Daniels* test requires that the movement of a victim be

---

[1]

Penal Code section 209, subdivision (b)(2), enacted in 1997, codifies this rule, except that it does not require that the movement "substantially" increase the risk of harm to the victim. (*People v. Martinez* (1999) 20 Cal.4th 225, 232, fn. 4.)

9

more than incidental to the robbery. (*People v. Daniels, supra*, 71 Cal.2d at p.

1139.) Brief movements to facilitate the larger crime do not constitute kidnapping

for robbery. (*Id.*) As the *Daniels* court clarified: "Indeed, when in the course of a

robbery a defendant does no more than move his victim around inside the premises

in which he finds him - whether it be a residence, as here, or a place of business or

other enclosure - his conduct generally will not be deemed to constitute the offense

proscribed by section 209." (*Id.* at p. 1140.)

"With regard to the first prong, the [trier of fact] considers the 'scope and

nature' of the movement, which includes the actual distance a victim is moved.

[Citations.] There is, however, no minimum distance a defendant must move a

victim to satisfy the first prong." (*People v. Vines, supra,* 51 Cal.4th 830 at p.

870.) The "context of the environment in which the movement occurred, " is also

considered. (*People v. Rayford* (1994) 9 Cal.4th 1, 12.)

Courts have generally found movement of a victim within a business to be

merely incidental to the commission of the alleged robbery, which is insufficient to

constitute the offense proscribed in Penal Code section 209. (*People v. Daniels,*

*supra*, 71 Cal.2d at 1140.) Numerous cases illustrate these principles. (See, e.g.,

*People v. Morrison* (1971) 4 Cal.3d 442, 443 [movement up and down stairs and

into various rooms of residence incidental to robbery]; *People v. Smith* (1971) 4

Cal.3d 426, 427 [movement of a hotel clerk about an office and then to a second

10

floor room insufficient to sustain a conviction for kidnapping for the purpose of robbery]; *People v. Killean* (1971) 4 Cal.3d 423, 424 [movement of victims across apartment threshold and through several rooms looking for valuables was incidental to robbery]; *People v. Williams* (1970) 2 Cal.3d 894, 902-904 [movement of gas station attendant from cash register to locked bathroom and then around premises was incidental to the robbery]; *In re Crumpton* (1973) 9 Cal.3d 463, 466 [kidnapping for robbery conviction where the victim, a gas station attendant, was forced at gunpoint to walk from the gas station island to the gas station office and then to a truck parked about 20 to 30 feet away on the gas station premises]; *People v. John* (1983) 149 Cal.App.3d 798 [movement of 465 feet inside "interconnected living quarters shared by [victim] and his parents" was incidental to robbery].)

In *People v. Hoard* (2002) 103 Cal.App.4th 599, 607, the Court of Appeal, Fourth Appellate District, Division Two considered a case in which an assailant moved jewelry store employees about 50 feet into the back of the store. In the backroom, the assailant bound the victims' wrists and ankles and taped their mouths shut. (*Id.* at p. 602.) Confining the employees in the back office gave the perpetrator free access to the jewelry and allowed him to conceal the robbery from any entering customers who might have thwarted him. (*Id.* at p. 607.) In *Hoard,* the movement of the two women served only to facilitate the crime with no other

11

apparent purpose.  The Court held that, because the defendant moved the employees for the sole purpose of facilitating the robbery, there was no kidnap for robbery offense.  (*Id.* at p. 607.)

Here, like in *Hoard*, the movement of the store employees was for the sole purpose of facilitating the robbery.  Appellant and his codefendant moved Lyle from the counter area to the front door to lock the door and secure the security gate to conceal the robbery from entering customers who might have thwarted the robbery.  Vargas was moved from the back of the store to the front of the store so that appellant and his codefendant could have each of the store employees within eyesight to ensure that the authorities were not called.  All three women were then moved to the back of the store where the safe and store inventory were kept so that the perpetrators could get access to the locked inventory cabinets and safe, the target of the robbery, and also conceal the robbery from potential customers and passers-by who could interrupt the robbery.  Confining the women to the back of the store gave appellant and his co-defendant free access to the store and its contents and ensured that the robbery would not be discovered.  Finally, Vargas was directed to return to the front of the store to obtain the cash register tills and provide their contents to the perpetrators.  Appellant's movement of the three employees served only to facilitate the robbery with no other apparent purpose. The employees were moved solely so that the fruits of the robbery could be

12

obtained.  Thus, like in *Hoard*, the evidence was insufficient to satisfy the first prong of the asportation element of kidnapping for robbery.

The entirety of the movement of each victim took place in the store where the robberies were committed and was done solely to facilitate the robbery.  Under *Daniels* and its progeny, the movement of the robbery victims a short distance within the store in order to facilitate the robbery did not constitute kidnapping for robbery in violation of Penal Code section 209.  Accordingly, appellant's convictions for kidnapping for robbery cannot stand because the asportation was merely incidental to the robbery.

Upon a finding that movement of a victim is merely incidental, a court need not consider whether the victim was subjected to an increased risk of harm. (*People v. Washington* (2005) 127 Cal.App.4th 290, 301.)  "Where the movement of a robbery victim is substantially similar to that found insufficient to support a conviction of aggravated kidnapping in *Daniels* and its progeny, analysis of whether the movement of the victim increased the risk of harm need not be undertaken." (*Id.*)  Thus, because the movement of the employees was incidental to the commission of the robbery, appellant's conviction on Counts 1, 2, and 3 cannot stand and must be reversed.

D.     The Movement Did Not Increase the Risk of Harm to the Store Employees

The second requirement of the asportation element of kidnapping for

13

robbery requires that the movement increase the inherent risk of harm to the victims. (*People v. Hoard, supra*, 103 Cal.App.3d at p. 602, citing, *People v. Daniels, supra*, 71 Cal.2d at pp. 1138-1139, *People v. Timmons* (1971) 4 Cal.3d 411, 414.) "The 'risk of harm' test is satisfied when the victim is forced to travel a substantial distance under the threat of imminent injury by a deadly weapon." (*In re Earley, supra*, 14 Cal.3d at p. 131.) It is also satisfied when the victim is forcibly controlled during a substantial asportation which exposes the victim to "grave risks of harm to which she would not have been subject had the robbery occurred at the point of initial contact." (*Id.* at p. 132.) The risk of harm envisioned by this prong includes "desperate attempts by the victim to extricate himself and "unforeseen intervention by third parties." (*People v. Lara* (1974) 12 Cal.3d 903, 909, fn.4.) The risk of harm also includes "decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes." (*People v. Rayford, supra*, 9 Cal.4th. at p. 13.)

In *People v. Hoard, supra*, 103 Cal.App.4th at p. 607, the Court concluded that the defendants movement of the victims to the back room where their ankles and wrists were bound with duct tape and their mouths taped shut did not substantially increase the risk of harm and thus, the second prong of the asportation element of kidnapping for robbery was also not met. Like in *Hoard*,

14

the victims in appellant's case were at less risk tied up in the back office where they could not try to thwart the robbery than had they remained in the front of the store at gunpoint. Moreover, like in *Hoard*, this is not a case where the movement of the victims, by fear, posed a substantial increase in the risk of psychological trauma to the victims beyond that to be expected from a stationary robbery. Here, the movement of the employees did not increase the risk of harm to the employees above and beyond that associated with a robbery at gunpoint.

As appellant has demonstrated above, the evidence did not support the first prong of substantial movement that is not incidental to robbery. Thus, even if this Court were to find that the movement increased the risk of harm in some manner, the movement was still not sufficient to meet the legal requirement of kidnapping for robbery. As set forth above, the due process clause of the Fourteenth Amendment protects a defendant except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. (*In re Winship, supra,* 397 U.S. at p. 364.) This did not occur in this case. Appellant's actions were not proscribed by Penal Code section 209, subdivision (b), as the kidnapping for robbery statute has been construed by the California courts. The prosecution, therefore, did not prove beyond a reasonable doubt all of the elements of kidnapping for robbery. Since the evidence to support appellant's convictions in Counts 1, 2 and 3 was insufficient as a matter of law, reversal of his convictions

15

is required.

## ARGUMENT II

### THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO STRIKE ANY OF APPELLANT'S STRIKES ON ANY OF THE COUNTS AND HIS SENTENCE AMOUNTS TO CRUEL AND UNUSUAL PUNISHMENT, IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS

A.    Summary of the Argument and Findings Below

In his Opening Brief, appellant argued that the trial court abused its discretion in failing to strike any of appellant's prior strikes and that the resulting sentence of 150 years to life is cruel and unusual punishment. (AOB 23-33.) Specifically, appellant argued that the trial court focused exclusively on the commitment offense and failure to consider any of the other factors relevant under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504 and its progeny. Respondent argued that there was no abuse of discretion because the court was aware of its discretion under 1385 and properly exercised it since there is nothing extraordinary about appellant or his offenses. (RB 24.)

The Court of Appeal rejected appellant's argument. (Opinion, p. 17-22.) The Court found that "In light of the nature and circumstances of both his present felonies and the prior felony convictions, the trial court reasonably determined that defendant fell within the spirit of the Three Strikes law, and it did not abuse its discretion when it declined to dismiss either or both of defendant's prior strikes."

16

(Opinion, p. 21.) The Court further concluded that appellant's cases is not an exceedingly rare and extreme case that violates the federal Constitution. (Opinion, p. 22.) Appellant disagrees and submits that review should be granted.

B.    Applicable Law on *Romero* Motions

Trial courts have discretion to dismiss strike priors "in furtherance of justice" for purposes of the Three Strikes sentencing scheme. (Pen. Code, § 1385, subd. (a); *People v. Superior Court (Romero)*, *supra*, 13 Cal.4th at pp. 529-530.) Some defendants who fall within the letter of the Three Strikes scheme "may also be deserving of a lesser punishment. This is precisely what section 1385 and *Romero* are all about." (*People v. Bishop* (1997) 56 Cal.App.4th 1245, 1250.) When a defendant falls "outside the scheme's spirit, in whole or in part," he may be treated as if the prior strikes did not exist. (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)

When considering whether to dismiss strike priors, a trial court must consider three factors "intrinsic" to the Three Strikes scheme: (1) the defendant's prior record; (2) the current offense; and (3) the defendant's personal characteristics and prospects. (*People v. Williams*, *supra*, 17 Cal.4th at p. 161; *People v. Carmony* (2004) 33 Cal.4th 367, 377.) While a defendant's recidivist status is undeniably relevant, it is not singularly dispositive. (*People v. Garcia* (1999) 20 Cal.4th 490, 501.) In *People v. Garcia, supra,* 20 Cal.4th at p. 503, this

17